UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
ABBELEN MAXIUS,                                              :
                                        Plaintiff,           :
                                                             :        21 Civ. 10422 (LGS)
            -against-                                        :
                                                             :        **OPINION AND ORDER**
MOUNT SINAI HEALTH SYSTEMS INC., et                          :
al.,                                                         :
                                        Defendants.          :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

        Plaintiff Abbelen Maxius brings this employment discrimination action against

Defendants Mount Sinai Health Systems Inc., Mount Sinai Beth Israel ("MSBI"), and their

employees Christopher Berner and Judith Block.  Plaintiff commenced this action acting pro se,

but is now represented by counsel.  Construing the pro se Complaint to state the strongest claims

it suggests, it alleges that all Defendants discriminated against Plaintiff because of her race in

violation of 42 U.S.C. § 1981; that MSBI discriminated against her because of her race, religion

and gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); and that all

Defendants discriminated against her on the same bases plus her age and immigration status in

violation of the New York State Human Rights Law ("NYSHRL") and the New York City

Human Rights Law ("NYCHRL").  The discrimination claims are based on theories of hostile

work environment, retaliation, disparate treatment and wrongful termination.  The Complaint

also alleges defamation in violation of New York common law.  *See Barnes v. City of New York*,

68 F.4th 123, 127 (2d Cir. 2023) ("[P]ro se submissions are reviewed with special solicitude and

must be construed liberally and interpreted to raise the strongest arguments that they suggest.").

Defendants move for summary judgment on all claims. For the following reasons, the motion is granted.

## I.    BACKGROUND

The following facts are drawn from the parties' Rule 56.1 statements and other submissions on this motion. The facts are undisputed or based on record evidence drawing all reasonable inferences in favor of Plaintiff as the non-moving party. *See N.Y. State Teamsters Conf. Pension & Ret. Fund v. C & S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d Cir. 2022).

Plaintiff is a Black woman, a Christian and has DACA status. She began working at MSBI in November 2015 as an administrative assistant in the Risk Management Department (the "Department"), where she reported to Defendant Block. Nancy Paljevic, Plaintiff's co-worker, began working in the Department as an administrative assistant in 2017. In November 2018, Plaintiff told Block that, in 2017, Paljevic twice asked Plaintiff if she was gay and once stated that she knew some gay-friendly places Plaintiff could hang out. Paljevic later apologized and brought Plaintiff two bottles of wine. Also in November 2018, Plaintiff met with Block and complained that she thought Paljevic was gossiping about her and did not respect her because she is young. Block spoke with Paljevic and reminded her about the need for privacy and boundaries.

In 2019, Plaintiff complained to Donnette Truss, the Director of Human Resources, about how Paljevic had twice asked Plaintiff if she was gay. In a letter dated October 1, 2019, Plaintiff told Truss that, among other things, Paljevic: (i) was aggressive, obnoxious, and boisterous, (ii) called Plaintiff a bitch on one occasion, (iii) stared at her, (iv) asked her twice in 2017 whether she was gay, (v) gossiped about her and (vi) was sarcastic. Plaintiff and Truss later met to discuss the issues Plaintiff had raised in her letter, and Truss told Plaintiff that she would speak

to Block and Paljevic. When Truss spoke with Paljevic, Paljevic denied asking about Plaintiff's sexual orientation but said that she did share with her a resort that was gay and straight friendly. Paljevic said she wanted a cordial working relationship with Plaintiff and was willing to meet with Plaintiff and Truss, who would serve as a mediator. Plaintiff was unwilling to meet with Paljevic. Truss met with Paljevic to discuss acceptable workplace conduct. Plaintiff made the same complaints about Paljevic to MSBI's Corporate Compliance Department ("Compliance"). Someone from Compliance informed Plaintiff that, after speaking with Truss and Block, she believed Plaintiff's concerns had been handled in a fair and consistent manner.

Plaintiff and Paljevic continued to experience conflict. In a 2021 incident, Paljevic was placed in charge of donated scrubs, which were stored in an empty office. Plaintiff alleges (but Paljevic denies) that when Plaintiff went into the office one day, Paljevic accused her of stealing scrubs. Plaintiff later emailed Block to complain about the incident. Block met with Plaintiff and Paljevic together and expressed her expectation that they would communicate in a civil and respectful manner.

On March 11, 2021, Plaintiff filed a complaint with the New York State Division of Human Rights (the "NYSDHR") against MSBI, Block and Paljevic, alleging age, sexual orientation and sex discrimination, sexual harassment and retaliation. On October 5, 2021, the NYSDHR issued a Determination and Order After Investigation, finding that there was no probable cause to believe the claims.

Around the summer of 2021, Block told Plaintiff and Paljevic that they would need to move from their private offices into cubicles to make room for several new Clinical Risk Managers who each required their own offices. On September 13, 2021, Plaintiff sent an email to Block stating that she had accessed Paljevic's folder on the hospital's shared drive. The email

contained a screenshot of items that Paljevic had downloaded four years earlier relating to witchcraft, magic, druids, alchemy and the occult.  Defendants contend that Block forwarded this email to Human Resources for advice on how to proceed.  On September 20, 2021, and again on September 27, Plaintiff sent an email to the members of the MSBI Board of Trustees regarding the materials she found in Paljevic's folder on the shared drive.  In the email, Plaintiff wrote that "Paljevic appears to be mentally unstable and a loose cannon," and made reference to the book collections of Adolf Hitler and Heinrich Himmler, which Plaintiff claimed contained similar materials to those in Paljevic's folder.  Plaintiff also filed a police report about the materials.  At the end of September 2021, Defendant Berner, MSBI's Vice President of Human Resources, communicated with Carolina Marroquin, Labor Relations Manager, and made her aware of the situation.

Plaintiff did not want to move to her designated cubicle because she did not want to sit next to Paljevic.  Berner emailed Plaintiff telling her to move to the designated cubicle, to which Plaintiff responded by email that Paljevic's possession of materials "based on Witchcraft, Human Sacrifice to Satan, Demonology, Spellcasting and Occultism on the Hospital Share-drive . . . makes her a potential danger to everyone around her."  Berner met with Plaintiff in person, during which she again refused to move to the designated cubicle.  Berner then placed Plaintiff off-duty.  Berner took one of Plaintiff's ID badges.  The next day, Plaintiff returned to work, using an old ID badge from a different location to gain access to the building.  Berner then confiscated the old ID badge, took Plaintiff's keys and had her escorted off premises by security.

On October 8, 2021, Block sent a letter to Plaintiff which stated that, because she had not returned to work or reached out to Block or Labor Relations, the Hospital would accept her resignation, effective October 11, 2021.

## II.    STANDARD

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for a nonmoving party."[1]  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021).  When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing to particular parts of materials in the record.  *See* Fed. R. Civ. P. 56(c)(1)(A).  In considering Defendants' motion for summary judgment, the Court is "required to accept all sworn statements by [Plaintiff] as to matters on which she [is] competent to testify, including what she did, what she observed, and what she was told by company managers."  *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019).  "A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory."  *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021).  The Court also "must disregard all

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

evidence favorable to [Defendants] that the jury is not required to believe," that is, "give credence to the evidence favoring [Plaintiff] as well as that evidence supporting [Defendants] that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Davis-Garett*, 921 F.3d at 46 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)).

The district court is not required to "conduct an exhaustive search of the entire record before ruling on a motion for summary judgment." *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002); *accord Green v. Mount Sinai Health Sys., Inc.*, No. 17 Civ. 3999, 2019 WL 4392691, at *3 (S.D.N.Y. Sept. 12, 2019), *aff'd*, 826 F. App'x 124 (2d Cir. 2020). "A party opposing a motion for summary judgment must specifically respond to the assertion of each purported undisputed fact and, if controverting any such fact, must support its position by citing to admissible evidence in the record." *Green*, 2019 WL 4392691, at *3.

## III.    DISCUSSION

### A.    Federal Discrimination Claims

The Complaint is construed to allege that all Defendants discriminated against Plaintiff because of her race in violation of § 1981 and that MSBI discriminated against her because of her race, religion and gender in violation of Title VII. Both § 1981 and Title VII prohibit employment discrimination. Section 1981 imposes individual liability. *Tolbert v. Smith*, 790 F.3d 427, 434 n.3 (2d Cir. 2015); *accord Karupaiyan v. CVS Health Corp.*, No. 19 Civ. 8814, 2023 WL 5713714, at *9 (S.D.N.Y. Sept. 5, 2023). Title VII does not. *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023).

Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "This section thus outlaws discrimination with respect to

6

the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Williams v. New York City Hous. Auth.*, 61 F.4th 55, 70 (2d Cir. 2023). Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment," or from taking adverse employment action against an individual "because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C.A. § 2000e-2.

The requirements to show a discrimination claim under § 1981 mirror those under Title VII. *See Banks v. Gen. Motors, LLC*, 81 F.4th 242, 261-62, 275 (2d Cir. 2023) (noting that hostile work environment and retaliation claims are subject to the same standard under both § 1981 and Title VII); *Radwan v. Manuel*, 55 F.4th 101, 131 (2d Cir. 2022) (noting that discrimination claims under Title VII and § 1981 both require but-for causation). Both § 1981 and Title VII require a plaintiff to demonstrate that she was discriminated against because she belongs to a protected class. Plaintiff's federal law claims fail primarily because the record evidence does not support an inference that Defendants' alleged misconduct was because of Plaintiff's race, religion, gender or other protected characteristic.

### 1. Hostile Work Environment

Defendants' motion for summary judgment on the hostile work environment claim under Title VII and § 1981 is granted. Hostile work environment claims under § 1981 and Title VII are governed by the same standard. *Banks*, 81 F.4th at 261-62. "Title VII does not set forth a general civility code for the American workplace, but when a workplace is permeated with discriminatory intimidation, ridicule, and insult that is *sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment*, Title VII is violated." *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 228 (2d Cir. 2024).

"To prove a hostile work environment in violation of Title VII, a plaintiff must establish both objective and subjective elements. The misconduct shown must have been severe or pervasive enough to create an objectively hostile or abusive work environment, that is, an environment that a reasonable person would find hostile or abusive." *Id.* at 228-29. "And the victim must have subjectively perceived the environment to be abusive." *Id.* at 229. "Whether a particular environment is objectively 'hostile' or 'abusive' can be determined only by looking at *all* the circumstances," which may include but are not limited to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* "[H]ostile work environment claims may be supported by facially sex-neutral incidents and 'sexually offensive' acts may be facially sex-neutral." *Id.*

The incidents complained of "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014); *accord Sanderson v. Leg Apparel LLC*, No. 19 Civ. 8423, 2020 WL 7342742, at *6 (S.D.N.Y. Dec. 14, 2020). While a single incident can sometimes be enough to create a hostile work environment, that incident must be "extraordinarily severe." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002); *accord Sanderson*, 2020 WL 7342742, at *6. "Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004); *accord Sanderson*, 2020 WL 7342742, at *6.

Whether conduct is sufficiently severe and pervasive to state a hostile work environment claim is an issue of fact, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001); *accord Felix v. New York City Dep't of Educ.*, No. 21 Civ. 6109, 2023 WL 4706097, at *12 (S.D.N.Y. July

24, 2023), unless the record evidence is insufficient to establish a hostile work environment as a matter of law, *see, e.g., Black v. Buffalo Meat Serv., Inc.*, No. 21-1468, 2022 WL 2902693, at *2 (2d Cir. July 22, 2022) (summary order) ("[F]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments."); *Morales v. Rooney*, 509 F. App'x 9, 11 (2d Cir. 2013) (summary order) (holding summary judgment was appropriate where "sporadic events . . . over the two to three years that plaintiffs remained under defendants' supervision" were insufficient to support a hostile work environment claim).

The sporadic comments to which Plaintiff points do not demonstrate the existence of "severe or pervasive" hostility or abuse. *Moll*, 94 F.4th at 228. Plaintiff identifies five comments and incidents between 2017 and 2021 as the basis for her sexual harassment / hostile work environment claims: (1-2) twice in 2017, Paljevic asked Plaintiff if she was gay; (3) also in 2017, Paljevic said she knew some places Plaintiff could hang out that were LGBTQ-friendly; (4) prior to October 1, 2019, Paljevic once called Plaintiff a "bitch" and (5) in September 2021, Plaintiff discovered files hosted in Paljevic's shared drive folder contained sexual material.

From an objective viewpoint, this conduct was not physically threatening or humiliating. After the two occasions when Paljevic asked about Plaintiff's sexual orientation in 2017, Paljevic apologized, and the incidents did not recur. Though Plaintiff, in her memorandum in opposition, claims she was sworn at during work tasks and subjected to "abusive and sexually charged language," none of the record citations to which she points speak to anything other than the above incidents.

Nor does Plaintiff's discovery of the disturbing files in Paljevic's personal folder on the MSBI shared drive show an objectively hostile or abusive work environment. Plaintiff claims she was "subjected to a barrage of sexual, racially charged, anti-religious and anti-immigrant files." But Plaintiff's exposure to the files was entirely in her own control; she sought out the files in another employee's personal file and would not otherwise have seen them. This type of exposure is unlike the unavoidable exposure to discriminatory images and comments that have sometimes been held sufficient to establish a hostile work environment. *See, e.g., Petrosino*, 385 F.3d at 221-23 (finding evidence of "incessant sexually offensive exchanges at the daily assignment meeting and omnipresent sexual graffiti in the terminal boxes" precluded summary judgment on a hostile work environment claim); *Ruiz v. City of New York*, No. 14 Civ. 5231, 2015 WL 5146629, at *9 (S.D.N.Y. Sept. 2, 2015) (holding plaintiffs sufficiently pleaded a hostile work environment claim with allegations that coworkers circulated messages "depicting an image of [plaintiff's] face 'photoshopped' onto a naked woman's body . . . and then 'approached and threatened'" plaintiff and that plaintiffs "were the subject of multiple instances of sexually-explicit graffiti using their names"). Instead, even when considered with the other comments and incidents, Plaintiff's searching out one cache of offensive files cannot "rationally be found to create a pervasive atmosphere of intimidation, ridicule and insult." *DeSalvo v. Volhard*, 312 F. App'x 394, 397 (2d Cir. 2009) (summary order) (holding exposure to a single "postcard of a woman in bathing attire" combined with unrelated insults by coworkers did not create a hostile work environment).

### 2. Disparate Treatment and Wrongful Termination

Defendants' motion for summary judgment of the disparate treatment and wrongful termination claims under Title VII and § 1981 is granted. Title VII makes it unlawful for employers "to discharge . . . or otherwise to discriminate against any individual" in his or her

employment "because of such individual's . . . race, color, religion, sex, or national origin . . . ."

42 U.S.C. § 2000e-2(a)(1). "Section 1981 discrimination claims are analyzed under the same

substantive standard applicable to Title VII discrimination claims." *McKinney v. Cnty. of*

*Duchess*, No. 19 Civ. 3920, 2024 WL 1376499, at *10 (S.D.N.Y. Mar. 31, 2024).

Title VII & § 1981 "discrimination claims are governed at the summary judgment stage

by the burden-shifting analysis first established in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973)." *Tolbert*, 790 F.3d at 434; *accord Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp.

3d 303, 328 (S.D.N.Y. 2020). Under the *McDonnell Douglas* framework:

> "First, the plaintiff must establish a *prima facie* case of discrimination. If the
> plaintiff has established a *prima facie* case, the burden then shifts to the employer
> to articulate some legitimate, nondiscriminatory reason for the disparate
> treatment. If the employer articulates such a reason for its actions, the burden
> shifts back to the plaintiff to prove that the employer's reason was in fact a pretext
> for discrimination."

*Buon*, 65 F.4th at 78-79.

Plaintiff has failed to establish a *prima facie* case of discrimination under Title VII. To

establish a *prima facie* case, a plaintiff must show that "(1) she is a member of a protected class;

(2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the

circumstances give rise to an inference of discrimination." *Bart v. Golub Corp.*, 96 F.4th 566,

570 (2d Cir. 2024). "[A] plaintiff's burden of establishing a prima face case is not onerous."

*Banks*, 81 F.4th at 270. At summary judgment, a plaintiff must "proffer[] admissible evidence

show[ing] circumstances that would be sufficient to permit a rational finder of fact to infer a

discriminatory motive." *Id.* at 272.

Here, Plaintiff asserts that MSBI took the following adverse actions against her:

terminated her employment and related conduct, required her to sit near Paljevic and gave her

declining performance reviews. But the record does not support an inference that MSBI took

these steps because of Plaintiff's race, religion or alienage.  As an at-will employee, Plaintiff

could be discharged for any reason other than her membership in a protected class.  Permissible

reasons may include the employee's relative performance to other employees, personality

conflicts or restructuring decisions, so long as these are not pretexts for discrimination.  *See, e.g.,*

*Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (affirming as non-

pretextual termination because plaintiff stopped going to work); *Olle v. Columbia Univ.*, 332 F.

Supp. 2d 599, 616-17 (S.D.N.Y. 2004) (holding performance concerns and company

restructuring were legitimate and non-pretextual reasons for termination), *aff'd*, 136 F. App'x

383 (2d Cir. 2005).  Termination for such a reason may be unfair or wrong but is not actionable

under anti-discrimination law.

"It is well-settled that an inference of discriminatory intent may be derived from a variety

of circumstances, including, but not limited to: the employer's continuing, after discharging the

plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or

the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its

invidious comments about others in the employee's protected group; or the more favorable

treatment of employees not in the protected group; or the sequence of events leading to the

plaintiff's discharge." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009); *accord*

*Khanna v. MUFG Union Bank, N.A.*, 785 F. App'x 15, 16 (2d Cir. 2019).

Plaintiff points to several instances of alleged discriminatory behavior that she contends

support an inference of "invidious racial profiling and institutional racism."  She highlights (1)

an incident where Paljevic accused her of stealing scrubs, (2) the statement of Gabrielle Rivera, a

new Senior Clinical Risk Manager, that Plaintiff was prone to outbursts and scared Rivera, (3)

Rivera's request that security question anyone fitting Plaintiff's description after she was placed

12

off-duty and (4) Berner's decision to have Plaintiff escorted off the premises. These incidents, Plaintiff argues, flow from invidious tropes and Defendants' perception of Plaintiff as (in Plaintiff's words) "an angry Black woman." While acknowledging Plaintiff's sincerely held conviction that these interactions evinced institutional racism, the evidence on its face does not support an inference that Plaintiff was fired, assigned her cubicle or given declining performance reviews because of her race. The remarks and actions Plaintiff complains of are all facially race-neutral which, as a matter of law, do not create an inference that Defendants acted with discriminatory intent. *See Trower v. Mount Sinai Hosp.*, No. 16 Civ. 4322, 2018 WL 4283724, at *6 (S.D.N.Y. Sept. 6, 2018) (stating that "[w]here a plaintiff's sole evidence of discriminatory animus turns on facially neutral remarks, those neutral remarks are insufficient to support a claim of discriminatory motivation" and collecting cases).

Plaintiff next argues that Paljevic, who is white, a U.S. citizen, not Christian and older than Plaintiff, received preferential treatment in the disciplinary measures she received, which allegedly gives rise to an inference that MSBI acted with discriminatory intent when it terminated Plaintiff's employment. Plaintiff compares the verbal warning that Paljevic received in response to her shared drive materials with Plaintiff's termination after refusing to abide her supervisor's instructions that she and Paljevic relocate from their offices to adjoining cubicles. "A showing of disparate treatment -- that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside the plaintiff's protected group -- is a recognized method of raising an inference of discrimination for the purposes of making out a *prima facie* case." *King v. Aramark Servs. Inc.*, 96 F.4th 546, 563 (2d Cir. 2024). "To make this *prima facie* showing, there must be a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Id.* While "a plaintiff is not obligated to

show disparate treatment of an *identically* situated individual," a proposed comparator -- in this case, Paljevic -- "must be similarly situated in all *material* respects." *Radwan*, 55 F.4th at 136. Here Plaintiff's and Paljevic's alleged misconduct is not sufficiently similar to give rise to an inference that Plaintiff was fired because of discriminatory animus.

Nor does Plaintiff's unsupported contention that Block "continuously brushed Plaintiff's complaints about Paljevic aside and chose to believe Paljevic's version of events" show that Block and MSBI acted with discriminatory intent. The portion of Block's deposition to which Plaintiff points does not support this conclusion; Block explained that, when she looked into the scrubs incident, she took neither side and faulted both Paljevic and Plaintiff for "how they engaged with one another." She wrote in her report and testified that she found "wrongdoing on both sides" because "[Plaintiff and Paljevic] got into another skirmish" due to "ineffective communication." Plaintiff cites no other evidence to support the assertion that Block chose to believe Paljevic's version of events, and Block did not testify that she believed Paljevic more than Plaintiff.

Plaintiff's argument that "MSBI did not tell [her] about an open position that would have constituted a promotion" is equally unavailing; it does not show discriminatory intent, nor is the conduct an adverse employment action. The portion of the deposition testimony that Plaintiff cites to support this argument states that the position was posted on the employee Intranet. Plaintiff points to no evidence that Defendants had an obligation to inform her of the open position beyond posting it. Plaintiff offers no proof that she had inadequate access to information about the position through that channel.

To the extent that Plaintiff attempts to assert that the failure to promote her was an adverse action giving rise to a claim, that claim fails as a matter of law. Such a claim requires a

14

plaintiff to demonstrate that: "1) [s]he is a member of a protected class; 2) [s]he applied for promotion to a position for which [s]he was qualified; 3) [s]he was rejected for the position; and 4) the employer kept the position open and continued to seek applicants." *Mauro v. S. New England Telecommunications, Inc.*, 208 F.3d 384, 386 (2d Cir. 2000); *accord Vasquez v. City of New York*, No. 22 Civ. 5068, 2024 WL 1348702, at *9 (E.D.N.Y. Mar. 30, 2024). Plaintiff does not argue that she applied for a promotion and that her application was rejected. The law does not support a free-standing requirement that an employer affirmatively alert employees to any opportunities for promotion for which they may qualify.

Defendants are also entitled to summary judgment on Plaintiff's claim of religious discrimination because the evidence does not establish a *prima facie* case of religious discrimination. In order to support an inference of discrimination, a plaintiff must produce evidence that the relevant actors accused of discrimination knew of the plaintiff's protected characteristic. *See, e.g., Szewczyk v. Saakian*, 774 F. App'x 37, 40 (2d Cir. 2019) (summary order) (affirming a grant of summary judgment on plaintiff's religious discrimination claim where "[plaintiff] offered no evidence that [defendant] was aware of her religion"); *Giurca v. Bon Secours Charity Health Sys.*, No. 23-200, 2024 WL 763388, at *1 (2d Cir. Feb. 26, 2024) (summary order) (holding that plaintiff failed to state a claim because he did "not allege that the Hospital Defendants were aware of his Romanian Orthodox religion, much less that they took any actions based upon that religion"). In her deposition testimony, Plaintiff identified Block, Berner, Rivera and the Board of Trustees as having discriminated against her on account of her religion. Plaintiff also testified that Defendant Berner did not know that Plaintiff is Christian, and that she was unsure if Defendant Block and Rivera knew she is a Christian. When asked "What did the Board of Trustees [of MSBI] do to discriminate against you because of your

religion?" Plaintiff responded, "Nothing." This testimony warrants summary judgment for Defendants on the Title VII and § 1981 religious discrimination claim. *See Szewczyk*, 774 F. App'x at 40. Plaintiff attempts to refute Defendants' argument that no one knew Plaintiff's religion by pointing to deposition testimony that Block told Marroquin that Plaintiff was Muslim. This testimony further undermines, rather than supports, the claim that Plaintiff was discriminated against because she is Christian. Plaintiff has not proffered evidence to support an inference of discrimination based on religion.

### 3. Retaliation

Defendants' motion for summary judgment on the retaliation claim under Title VII and § 1981 is granted. Title VII bars an employer from "discriminat[ing] against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). A § 1981 retaliation claim is "analyzed pursuant to Title VII principles." *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015); *accord Trotter v. Nat'l Football League*, No. 23 Civ. 8055, 2024 WL 2952637, at *4 (S.D.N.Y. June 12, 2024).

As with discrimination claims, retaliation claims are assessed "using the burden-shifting framework from *McDonnell Douglas*." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015). The first step is for the plaintiff to establish a prima facie case of retaliation. *Id.* "To make out a prima facie case of retaliation [under Title VII], a plaintiff must make four showings: that (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).

"The term protected activity refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000); *accord Arroyave v. Universal Remote Control, Inc.*, No. 20 Civ. 8040, 2023 WL 5983941, at *11 (S.D.N.Y. Sept. 14, 2023). Here, Plaintiff's protected activities -- which Defendants concede -- were her complaints in 2018 and 2019 to Block, Human Resources and Compliance about Paljevic asking her twice in 2017 if she was gay, and her 2021 NYSDHR complaint.

Plaintiff incorrectly argues that her protected activities also included her complaints in September 2021 about Paljevic's materials on the shared drive. "Implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's complaint was directed at conduct prohibited by Title VII." *Rojas,* 660 F.3d 98 at 107-08; *accord Green*, 826 F. App'x at 125. Plaintiff's email to Block, Louis Schenkel, Vice President of Compliance for the Mount Sinai Health System, and Rivera on September 13, 2021, makes no mention of discriminatory conduct but merely attaches screenshots of Paljevic's shared drive and states "Please see attached information uploaded on Hospital property." The email makes no mention of perceived discriminatory conduct. Plaintiff's email to the Board of Trustees makes no mention of discriminatory conduct and, instead, merely complains of the materials kept by Paljevic on the shared drive, calling it "shameful and disturbing" that MSBI "is allowing an employee to study/practice Demonology during work hours." Plaintiff did not complain that posting the materials was discriminatory towards her or towards a protected class generally, even though she does state that Paljevic's "conduct and postings over the years" should be considered "unprofessional, insensitive, shameful and []potentially a Hate Crime . . . ." Evidence that Defendants understood that Plaintiff felt offended and threatened is insufficient to demonstrate

that Plaintiff alerted them to discriminatory conduct.  While there are no "magic words" a complainant must necessarily recite, the "onus is on the speaker to clarify to the employer that she is complaining of unfair treatment due to her membership in a protected class." *Malone v. Town of Clarkstown*, No. 19 Civ 5503, 2022 WL 2834105, at *7 (S.D.N.Y. July 20, 2022); *accord Williams v. Westchester Med. Ctr. Health Network*, No. 21 Civ. 3746, 2024 WL 990153, at *11 (S.D.N.Y. Mar. 7, 2024).  Because Plaintiff did not do so, her complaints regarding Paljevic's shared drive are not protected activity.  Only her 2018 and 2019 harassment complaints and her 2021 NYSDHR complaint are protected activities.

A reasonable juror could not conclude that Defendants took adverse action against Plaintiff based on her protected activities.  "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Lively v. WAFRA Inv. Adv. Grp.*, 6 F.4th 293, 304 (2d Cir. 2021).  Likewise, to prevail on a § 1981 retaliation claim, "a plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).  A causal connection "can be established indirectly by showing that the adverse action followed soon after the protected activity." *Myers v. Doherty*, No. 21-3012-CV, 2022 WL 4477050, at *2 (2d Cir. Sept. 27, 2022) (summary order).  However, the two years between Plaintiff's 2019 harassment complaint and Plaintiff's 2021 termination, and the nearly seven months between Plaintiff's NYSDHR complaint and her termination, is too long to permit an inference of retaliatory animus.  *See Vora v. New York City Dep't of Educ.*, No. 22 Civ. 10891, 2024 WL 1116312, at *11 (S.D.N.Y. Mar. 14, 2024) (holding four months to be too long to permit an inference of retaliation); *accord Wilson v. JPMorgan Chase Bank, N.A.*, No. 20 Civ. 4558, 2021 WL 918770, at *7 (S.D.N.Y. Mar. 10, 2021) ("District courts in this

18

Circuit have generally held that an interval of two to three months is too long to support

an inference of causation, even under the NYCHRL.") (collecting cases).

Plaintiff alternatively argues that her 2018 and 2019 complaints about Paljevic were the

basis for the more negative 2020 performance evaluation from Block.  But the evaluation

Plaintiff received was not an adverse employment action.  An adverse employment action is one

that is "harmful to the point that [it] *could well dissuade a reasonable worker from making or*

*supporting a charge of discrimination*."  *Moll*, 94 F.4th at 239.  In the 2020 evaluation, Block

still gave Plaintiff an overall rating of "strong contributor," while noting that Plaintiff needed to

"improve communication skills and conflict resolution skills for a more pleasant work

environment."  The decline in Plaintiff's overall performance appraisal -- from "role model" in

2019 to "strong contributor" in 2020 -- was not an adverse action because the evaluation was still

positive and would not dissuade a reasonable employee from making or supporting a charge of

discrimination.  *See Moy v. Perez*, 712 F. App'x 38, 41 (2d Cir. 2017) (summary order) ("Given

that [plaintiff's] performance evaluation was still positive (albeit less positive than in previous

years), neither the evaluation nor the circumstances surrounding its issuance plausibly make out

an adverse employment action."); *accord Byrne v. Telesector Res. Grp., Inc.*, 339 F. App'x 13,

17 (2d Cir. 2009) (summary order) (concluding that because satisfactory performance evaluation

was still positive, it was not an adverse employment action in the Title VII retaliation context,

even though evaluation was lower than in previous years).

B.    **City and State Claims**

The Court declines to exercise supplemental jurisdiction over the NYSHRL and

NYCHRL claims as well as the common law defamation claim.  A court may decline to exercise

supplemental jurisdiction if "the claim raises a novel or complex issue of State law," or "the

district court has dismissed all claims over which it has original jurisdiction . . . ."  28 U.S.C. §

1367(c). The Second Circuit has explained that "the default rule is that federal courts should not decide related state-law claims unless there is good reason for doing so." *Cangemi v. United States*, 13 F.4th 115, 135 (2d Cir. 2021). Here, all federal claims have been dismissed. The requirements of the NYSHRL after the 2019 amendment are still developing. *See Cooper v. Franklin Templeton Invs.*, No. 22-2763-CV, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) (summary order) (noting that after a 2019 amendment of the NYSHRL, "New York courts have not yet produced any substantive analysis of how th[e] amendment changes standards of liability under the NYSHRL," but "some courts in this Circuit have interpreted the amendment as rendering the standard for claims closer to the standard of the NYCHRL."); *see also Maragh v. Roosevelt Island Operating Corp.*, No. 21-2129, 2022 WL 14199384, at *2 (2d Cir. Oct. 25, 2022) (summary order) (finding no abuse of discretion where court declined supplemental jurisdiction over NYCHRL claim because it "would be evaluated under a different standard and would rely on developing issues of state law"), *cert. denied*, 144 S. Ct. 135 (2023). The Court declines to exercise jurisdiction over the state and city claims.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's Title VII and § 1981 claims. The Court declines to exercise supplemental jurisdiction over the NYCHRL, NYSHRL and defamation claims. Plaintiff's letter motion for oral argument is **DENIED** as moot.

The Clerk of Court is respectfully directed to close the motions at Dkts. 125 and 142 and to close the case.

Dated: September 12, 2024

New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE